United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 24, 2007**

Charles R. Fulbruge III
Clerk

REVISED June 1, 2007

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 06-20142

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON JERMAINE FORD,

Defendant-Appellant,

_____

On Appeal from the United States District Court
For the Southern District of Texas, Houston Division,

_____

Before DAVIS, DENNIS, and PRADO, Circuit Judges.

DENNIS, Circuit Judge:

The question before this court is whether a charge and conviction for "possession with an intent to deliver" a controlled substance under section 481.112(a) of the Texas Health and Safety Code can be used as a basis for a sentence enhancement as a "controlled substance offense" under U.S. Sentencing Guidelines Manual ("USSG") § 2K2.1(a)(4)(A) (2005). "Controlled substance offense" is defined in USSG § 4B1.2(b). USSG § 2K2.1 cmt. n. 1. USSG § 4B1.2(b) states:

1

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

We find persuasive two analogous cases that found similar convictions broader than the "drug trafficking offense" definition in the USSG, which is nearly identical to the definition of "controlled substance offense." In those analogous cases, the convicted offense encompassed a greater set of acts and intentions beyond those listed in the "drug trafficking offense" definition. In other words, since the conviction could be punishing conduct falling outside USSG's definition of a "drug trafficking offense," sentence enhancements were vacated in those two prior cases. We believe a similar result is warranted here for the same reasons.

We hold that a conviction for "possession with intent to deliver" under this Texas statute cannot automatically qualify as a "controlled substance offense" based on the evidence in the record. "Possession with intent to deliver" encompasses a set of intentional acts beyond those listed in USSG's definition of a "controlled substance offense." We therefore VACATE the sentence and REMAND to the district court for re-sentencing consistent with this opinion.

### FACTS

On July 14, 2005, Houston police officers Tran and Ponder

responded to a call from an individual stating that he had just seen the person who shot him a few days earlier. The officers went to the stated address and saw the alleged shooter inside the apartment who matched the description provided. Returning to the apartment with a Bureau of Alcohol, Firearms, and Tobacco (ATF) Special Agent, the agents confronted the suspect, later identified as defendant Jason Jermaine Ford, and the apartment lessee, Crystal McConnell, at the door. McConnell denied having a firearm in the apartment and consented to a search.

While searching, the defendant informed the officers that there was a .32 caliber firearm on a chair, which Officer Tran immediately recovered. Ford was then arrested and advised of his rights. The ATF agent determined that the firearm was manufactured outside of the state of Texas.

On September 8, 2005, a federal grand jury indicted the defendant on one-count of possession of a firearm after being convicted of a felony offense, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Ford entered a guilty plea on November 18, 2005.

The presentence report calculated Ford's total offense level to be seventeen, starting with a base offense level of twenty pursuant to USSG § 2K2.1(a)(4)(A) for a prior "controlled substance offense" and then subtracting three levels for the acceptance of responsibility pursuant to USSG § 3E1.1(a) and (b). A total offense

3

level of seventeen combined with a criminal history category of IV resulted in an imprisonment range of thirty-seven to forty-six months. Ford objected to the presentence report, arguing that his conviction was under a Texas statute that penalized acts and intents outside the USSG's "controlled substance offense" definition. As a result, Ford argued that his conviction should not qualify as a "controlled substance offense." Ford's charging documents, the indictment, and the judgment were available to the district court judge. No underlying facts about the conviction were provided in these documents.

Based on a comparison between the language of the conviction offense and underlying statute as found in these documents with the definition of "controlled substance offense" in the USSG, the court below overruled Ford's objection. Ford was, therefore, sentenced on February 10, 2006 to serve thirty-seven months followed by three years of supervised release.

## Analysis

This court reviews the district court's interpretation and application of the USSG *de novo*. United States v. Zuniga-Peralta, 442 F.3d 345, 347 (5th Cir. 2006). Because Ford's objection was preserved at trial, we review the record *de novo* to determine whether the district court's error was harmless. United States v. Lopez-Urbina, 434 F.3d 750, 765 (5th Cir. 2004).

### I. Garza-Lopez and Gonzales

The issue presented before this court is whether a conviction for "possession with intent to deliver" criminalizes more acts and intents than the limited set of conduct subject to sentencing enhancement as a "controlled substance offense." In two closely analogous decisions, this court held similar convictions to be broader than a nearly identical USSG definition of another offense subject to sentencing enhancement.

In <u>United States v. Garza-Lopez</u>, 410 F.3d 268, 271 (5th Cir. 2005), the defendant was previously convicted for "transporting/selling a controlled substance" under section 11379(a) of the California Health & Safety Code and for that previous conviction, the district court added a sentence enhancement for a "drug trafficking offense" under USSG § 2L1.2(b)(1)(A)(i). <u>See</u> USSG § 2L1.2 cmt. n. 1(B)(iv) (defining "drug trafficking offense").[1] This court held that the "transporting/selling a controlled substance" offense under the California statute was broader than the USSG's definition of "drug trafficking offense." <u>Id.</u> at 274-275. <u>See also</u> <u>United States v. Kovac</u>, 367 F.3d 1116, 1119 (9th Cir. 2004); <u>United States v. Navidad-Marcos</u>, 367 F.3d 903, 907-908 (9th Cir. 2004). The California statute, for instance, "criminalizes the

---

[1] "'Drug trafficking offense' means an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." USSG § 2L1.2 cmt. n. 1(B)(iv).

transportation of a controlled substance for personal use and offers to transport, sell, furnish, administer, or give away a controlled substance." Garza-Lopez, 410 F.3d at 274. None of the listed activities is covered by the "drug trafficking offense" definition, which "covers only the manufacture, import, export, distribution, or dispensing of a controlled substance (or possession with the intent to do any of these things)." Id. Therefore this court concluded the district court had committed plain error in adding a sentencing enhancement, because the basis for defendant's underlying conviction could be conduct that lies outside the narrow definition of a "drug trafficking offense." Id. at 275.

In United States v. Gonzales,--- F.3d ----, 2007 WL 1063993, at *2 (5th Cir. 2007) (per curiam) (published), this court held that a conviction under the same Texas statutory provision found in this case, section 481.112 of the Texas Health and Safety Code, was broader than the limited set of offenses subject to a sentencing enhancement under the USSG's definition of "drug trafficking offense." Gonzalez was charged and convicted with "unlawful delivery of a controlled substance" under the same Texas statutory provision. Id. at *1. In Gonzales, the court noted that "delivery" encompasses an "offer to sell" under the Texas statutory definition, and an "offer to sell" is not one of the acts included within the "drug trafficking offense" definition. Id. See also Tex. Health & Safety Code Ann. § 481.002(8) (defining "deliver"); Donley v. State, 140

S.W.3d 428, 429 (Tex. App. 2004) (interpreting "delivery" as any actual transfer, constructive transfer, or offer to sell); <u>Garza-Lopez</u>, 410 F.3d at 273 (listing "offers to . . . sell" as conduct outside USSG's definition of "drug trafficking offense").

Two aspects of this case may distinguish this case from these two precedents. We find both inconsequential for the judgment in this case.

First, "drug trafficking offense," and not "controlled substance offense," is the operative USSG offense in the two analogous cases described above. However, the wording in "drug trafficking offense" and "controlled substance offense" is almost identical. <u>Compare</u> USSG § 2L1.2 cmt. n. 1(B)(iv)("drug trafficking offense"), <u>with</u> USSG § 4B1.2(b) ("controlled substance offense"). Any minor textual differences do not control in this case.[2] Therefore, the definitions of "controlled substance offense" and "drug trafficking offense" are identical for our purposes here. <u>Cf. United States v. Gonzalez-Borjas</u>, 125 F.App'x. 556, 559 & n. 9 (5th Cir. 2005) (unpublished).[3]

Unlike the two analogous cases above, the conviction here was

---

[2] The two limited textual differences are: (1) "controlled substance offense" includes a one year term of imprisonment requirement; and (2) "drug trafficking offense" includes local law prohibitions. Both are inapposite to this case.

[3] As a general principle, similar Congressional statutory language should be read consistently if possible. <u>See</u> <u>Energy Research Found. v. Defense Nuclear Facilities Safety Bd.</u>, 917 F.2d 581, 582-83 (D.C. Cir. 1990).

for possession with the intent to deliver rather than just delivery or transportation. The Government contends the element of "possession" renders the "intent to deliver" element closer to acts and intents identified in the "controlled substance offense" definition even when "delivery" by itself, without evidence of actual possession, is not a "controlled substance offense" under Gonzales. Possession does not sufficiently distinguish this case from the analogous precedent. In effect, there is still a substantive difference between possession with an intent to deliver, including an intent to offer to sell drugs, versus possession with an intent to distribute. If the act of delivery in Gonzalez is outside the definition of "controlled substance offense," including the act of distribution, then, logically, the intent to deliver is similarly outside that definition and broader than a mere intent to distribute. Cf. Garza-Lopez, 410 F.3d at 274 (noting that the "drug trafficking offense" definition "covers only the manufacture, import, export, distribution, or dispensing of a controlled substance (*or possession with the intent to do any of these things*)")(emphasis added).

An offer to sell and the intent to offer to sell are operative elements of a conviction whether or not there is also actual possession. Cf. United States v. Palacios-Quinonez, 431 F.3d 471,

8

476 (5th Cir. 2005).[4] Possession does not somehow transform these operative intent elements in the conviction. Therefore, whether or not possession is implicated, the operative element of "intent to deliver," per Gonzales, is still broader than intents found in the "controlled substance offense" definition as "deliver" includes an offer to sell.  Since this operative intent element is broader, the whole conviction, regardless of the possession element, is broader than the "controlled substance offense" definition.

## II.  **Taylor Analysis**

This analysis is confirmed by the categorical approach of United States v. Taylor, 495 U.S. 575, 602 (1990).  Under Taylor,

---

[4] There is a critical difference between our conclusions here when compared with the analysis in Palacios-Quinonez, 431 F.3d at 476. In Palacios-Quinonez, this court noted one major difference between a conviction for an "offer to sell" controlled substances and a conviction for a "purchase for sale" of a controlled substance.  This court noted that an "offer to sell" does not necessarily (but could) implicate possession, while a "purchase for sale" is effectively equivalent and a sub-set of the "possession with an intent to distribute" offense.  Therefore while an "offer to sell" is broader and falls outside of the "drug trafficking offense" definition, a "purchase for sale" would not. Id. at 476.  While Ford was convicted with possession, his intention could still be an offer to sell.  His conviction does not necessarily rise to a "purchase for sale," because, as a mere possessor and not a purchaser, he does not necessarily have a clear right of control over the product. Id. at 476 n. 6 (noting the important differences in legal rights of control of a purchaser versus a possessor).  Therefore, as a mere possessor, Ford could still be intending to offer to sell what he may not have a clear right of control or, in other words, the "proverbial Brooklyn Bridge." Id. at 476.  In effect, an intent to distribute cannot be inferred as a necessary consequence of mere possession even if such an intent can be inferred from a "purchase for sale."

a court looks to the elements of the prior offense, rather than to the facts underlying the conviction, when classifying a prior offense for sentence enhancement purposes.  Garza-Lopez, 410 F.3d at 273.  There are two independent elements in Ford's prior offense: "possession" and an "intent to deliver."[5]

As we noted earlier, the statutory definition of "deliver" in the same Texas statute was ruled to encompass a greater number of acts, particularly "an offer to sell," than those listed in the "drug trafficking offense" definition.  Gonzales, 2007 WL 1063993, at *1.  Logically, the "intent to deliver" element in this conviction encompasses a greater number of intents, such as an intent to offer to sell, than those intents listed in the "control substance offense" definition.  Therefore, Ford's conviction is broader than the "control substance offense" definition, and, thus, Ford cannot be subject to the corresponding enhancement.[6]

----

[5] Simple possession alone is not a "controlled substance offense" under USSG. Salinas v. United States, 547 U.S. 188, 188 (2006) (per curiam).  Mere possession has to be coupled with a statutorily listed intent to be a "controlled substance offense." Id.

[6] In order to preserve the argument for further review, Ford also contends that his indictment under 18 U.S.C. § 922(g)(1) is unconstitutional both facially and as applied. An indictment under 18 U.S.C. § 922(g)(1) requires an effect on interstate commerce.  Ford argues that where the only interstate commerce nexus is the fact that the firearm at some point in the past traveled across state lines contravenes the limits of the commerce power as defined in United States v. Lopez, 514 U.S. 549, 551 (1995). But he concedes his argument is foreclosed by several opinions by this court.  See, e.g., United States v. Daugherty, 264 F.3d 513, 518 (5th Cir. 2001).

Accordingly, the district court erred in enhancing Ford's sentence pursuant to USSG § 2K2.1(a)(4)(A). If the "controlled substance offense" enhancement did not apply, the base level would have been lowered from twenty to fourteen under USSG § 2K2.1(a)(6)(A). After applying the two-level downward adjustment for acceptance of responsibility per USSG § 3E1.1(a), his imprisonment range would have been twenty-one to twenty-seven months. <u>See</u> USSG ch. 5, pt. A, Sentencing Table. The twenty-one to twenty-seven month sentencing range is far less than the thirty-seven month sentence imposed. Without the error, the district court could not have imposed Ford's current length of imprisonment. Therefore, the error was not harmless. <u>See</u> <u>Lopez-Urbina</u>, 434 F.3d at 765-766. <u>See also</u> <u>United States v. Luciano-Rodriquez</u>, 442 F.3d 320, 323 (5th Cir. 2006).

For the reasons stated above, we therefore VACATE the sentence and REMAND to the district court for re-sentencing consistent with this opinion.